UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | No. 3:22-cr-00327-3 |
| v. | ) | Judge Trauger |
| | ) | |
| CALVIN ZASTROW | ) | |

**SENTENCING MEMORANDUM ON BEHALF OF THE UNITED STATES**

COMES NOW the United States of America, by and through the undersigned counsel, and submits this sentencing memorandum with respect to Defendant Calvin Zastrow.

The Presentence Investigation Report (PSR) prepared for the Defendant correctly applies the leadership adjustment and vulnerable victim enhancement to reach a total offense level of 18, corresponding to a Guidelines range of 27-33 months of imprisonment. (PSR ¶ 71.) Probation has recommended a sentence of **27 months** on Count 1 and 6 months on Count 2, to run concurrently, followed by one year of supervised release. Based upon the Title 18, United States Code, Section 3553(a) sentencing factors, the United States has no objections to the term of imprisonment recommended by Probation for each count. The government believes a low-end of the Guidelines sentence to be sufficient but not greater than necessary to satisfy the objectives of sentencing, provided that the Court imposes three years of supervised release to deter the Defendant from any future violations of the FACE Act.

**APPLICABILITY OF THE SENTENCING FACTORS IN 18 U.S.C. § 3553(a)**

Once a court has determined the applicable Guidelines range, including any applicable departures, Section 3553(a) directs the Court to consider the sentence in light of several factors, including: (1) the nature and circumstances of the offense and the history and characteristics of the

1

defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; and (3) the need for adequate deterrence of criminal conduct and the protection of the public. 18 U.S.C. § 3553(a). Section 3553(a) then requires the Court to impose a sentence sufficient, but not greater than necessary, to comply with these purposes. *United States v. Blackwell*, 459 F.3d 739, 773 (6th Cir. 2006).

I.      **The Nature and Circumstances of the Offense and Characteristics of the Defendant**

The first § 3553(a) factor courts consider is the "nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The Offense Conduct section of the Defendant's PSR accurately reflects the evidence presented at trial. (PSR ¶¶ 8-21.) The Defendant organized and participated in the blockade of a reproductive health clinic in Mt. Juliet, Tennessee, for almost three hours on March 5, 2021. He and his co-defendants came prepared for a blockade with a pre-printed flyer that was titled "what really happened today in Mount Juliet? Police arrested peaceful, obedient Christians!" The flyer concluded with an email "wearerescuers@gmail.com," an email address created by and registered to co-defendant and co-conspirator Chester Gallagher.

The clinic had two access points: the main entrance for patients, and a second entrance that could only be accessed by employees. The Defendant arrived on the hallway outside the clinic with a large group at the beginning of the blockade. Prior to law enforcement's arrival, he held positions in that hallway to obstruct access to both entrances, including while Patient A was attempting to access the clinic and while Employee A was attempting to re-enter the clinic. The Defendant joined with other co-conspirators to form a horseshoe of blockaders to prevent Patient A from reaching the main entrance to the clinic, and the Defendant joined with a minor to prevent Employee A from re-entering the employee entrance the clinic. The Defendant and the minor were

positioned directly against the employee entrance when Employee A tried to re-enter. She repeatedly asked them to move, but the Defendant repeatedly responded, "No m'am." The Defendant remained in place even after law enforcement arrived and repeatedly ordered that he and his coconspirators disperse. The Defendant can be heard telling police that this was a blockade and not a protest. He can also be seen moving *into* the path of Mt. Juliet Police Corporal Lance Schneider when Corporal Schneider announced that he was escorting a woman who had an appointment and ordered that the Defendant and his coconspirators "part the seas." Corporal Schneider needed to use force to move the Defendant from his path. The Defendant ultimately refused to leave the hallway without being arrested.

The Government views the Defendant's role as a leadership one. The evidence suggests that he and co-defendant and co-conspirator Chester Gallagher organized and led this blockade. Days before the blockade, the Defendant and Mr. Gallagher met with other individuals in a park where the two managed the logistics for the planned blockade. The Defendant himself discussed the Freedom of Access to Clinic Entrances ("FACE") Act with the group. And during a livestream video that was posted on social media, Mr. Gallagher identified the Defendant as among those leading the blockade.

The Defendant and Mr. Gallagher's calculated and coordinated effort to commit a criminal offense did not just disrupt the reproductive health clinic. The entire medical pavilion was affected, most notably the other medical offices on the same floor as the clinic, including an orthodontist's office, the main entrance to which was visible in much of the defendants' video. The Court should consider the harmful affect the Defendant's crimes had on patients traveling to the pavilion for the many other medical services offered there.

3

The Court should also consider the Defendant's pattern of disregarding lawful orders from law enforcement and this Court. In three instances, in a relatively short period of time, the Defendant refused to comply with lawful orders from police to cease blocking or otherwise leave the premises of a reproductive healthcare facility. He did it in Fort, Myers, Florida on January 27, 2022, in Grand Rapids, Michigan on July 13, 2022, and he did it here. According to the PSR report, the Defendant was an organizer for the offense on January 27, 2022. And in this case, the Defendant knew of the FACE Act and he proceeded to violate it anyway. Defendant continued this pattern even while this case was pending, as he violated the conditions of release set by this Court when he traveled to Bristol, Virginia to participate in a protest at a reproductive healthcare facility. This behavior has yielded Defendant a criminal history that spans two decades and includes four convictions, three pending cases, and four arrests (excluding the arrest in this case), with his two most recent convictions coming in 2022.

A sentence at the low-end of the Guidelines range would account for the seriousness of the offense, the Defendant's role as a leader and organizer, the Defendant's criminal history, and his violation of the conditions of release set by this Court. Further, it recognizes that the blockade will have lasting impacts on Patient A, Employee A, and other clinic staff. That the Defendant is among those who led and organized the blockade, and was involved in virtually every sequence in which a victim or potential victim was prevented from accessing healthcare or their place of work, supports a Guidelines range sentence of imprisonment.

## II. Seriousness of the Offense, Promotion of Respect for the Law, and a Just Punishment

A sentence below the Defendant's Guidelines is unwarranted. Section 3553(a) directs the sentencing court to consider the need for the sentence "to reflect the seriousness of the offense, promote respect for the law, and to provide for a just punishment." 18 U.S.C. § 3553(a)(2)(A).

The offense here was borne out of the Defendant's lack of respect for the law. It was flagrant, recorded and livestreamed by this Defendant over the internet to train and encourage others to carry out their own unlawful blockades. It was traumatic for the patients and employees, two of whom testified at trial to the fear and anxiety they felt during and after they encountered the Defendant and his co-defendants. And although the criminal conduct was non-violent, there were moments where there was a risk of violence from the defendants' disorderly conduct. As Patient A's husband testified, had Patient A wanted to get into the clinic for her appointment, he would have had to use force to enable her access. As Corporal Schneider testified, he did use force against the Defendant and another blockader and was prepared to use more force to get a woman he believed to be a patient into the clinic. As Employee A testified, she did not want to push her way back into her office in part because she did not want anyone to be hurt. The Defendant's actions, and those of his fellow blockaders, raised the risk of violence in the hallway of a medical facility on a floor not just occupied by the reproductive health clinic but by other unrelated medical offices. A just punishment must include an active term of incarceration commensurate with the felony conduct for which the defendant has been convicted, felony conduct that had real effects on its victims.

## III.     Deterrence and Protection of the Public from Further Crimes

In addition to a Guidelines range sentence being just, it represents the minimum sentence necessary for deterrence. Protecting the public and deterring additional criminal conduct is another factor that courts are directed to consider under Section 3553(a)(2)(B)-(C). The sentence in this case should send a clear message to the Defendant that he must only act on his views through the many lawful and constitutionally protected means that are available to all.  The Defendant cannot continue to flagrantly disobey the law.

The Defendant has been convicted of a misdemeanor FACE Act violation and any subsequent FACE Act violation is a felony. *See* 18 U.S.C. § 248(b)(2) (making subsequent nonviolent physical obstruction FACE Act violations punishable by up to 18 months). This is an important legislatively-fashioned deterrent, the effect of which will be dulled if the Defendant does not receive a felony sentence for his felony conviction in this case. The Defendant is also subject to an upward adjustment for his role as a leader and organizer in the commission of the offense. The Defendant should therefore receive no less than the low-end of the Guidelines sentence recommended by Probation.

This factor also strongly favors the government's request for three years of supervised release. Part of the reason the government is asking the Court to issue a low-end of the Guidelines sentence is that the government believes that a three-year term of supervised release is an essential means of ensuring this Defendant's future compliance with the law.

### IV. Issues with the Sentence, Policy Considerations, Restitution, Sentencing Disparity

The remainder of the factors described in 18 U.S.C. § 3553(a) are concerned with the kinds of sentences available to the court, the category of offense, any amendments to the guidelines, any pertinent policy statements by the U.S.S.G., and a need for unwanted sentencing disparities and restitution. The United States submits that the recommended sentence is below the statutory maximum for these offenses and that there are no amendments to the Guidelines or relevant federal statutes that apply to this Defendant. The United States notes that this sentence is not pursuant to a violation of probation or supervised release. The United States is unaware of any pertinent policy statements concerning this Defendant's charged conduct. The United States has complied with the requirements of the Crime Victims' Rights Act but has not yet obtained information supporting a restitution request in this case.

The government has carefully considered the above issues in formulating its sentencing position with respect to the Defendant. The government's recommendation takes into account the Defendant's relative responsibility and culpability vis-à-vis the other defendants convicted in this case as well as the sentences of defendants convicted in cases charging similar conduct, including the sentences recently issued in a similar case, *United States v. Handy*, 22-cr-00096-CKK (D.D.C. May 15, 2024). The government's recommendation also reflects aggravating factors specific to defendant, including his criminal history, which consists of multiple convictions and arrests for similar conduct, and his violation of the conditions of release ordered by this Court.

**CONCLUSION**

WHEREFORE, based upon the factors set forth in Section 3553(a), the United States respectfully requests this Court sentence the Defendant to 27 months of incarceration on Count 1 and six months of incarceration on Count 2 to run concurrently, three years of supervised release, and no fine.

Respectfully submitted,

HENRY C. LEVENTIS
United States Attorney
Middle District of Tennessee

*s/Nani Gilkerson*
NANI GILKERSON
Assistant United States Attorney
791 Church St, Suite 3300
Nashville, Tennessee 37203
Phone: 615-401-6624

KRISTEN M. CLARKE
Assistant Attorney General
Civil Rights Division

*s/Kyle Boynton*

7

KYLE BOYNTON
Trial Attorney
950 Pennsylvania Ave. NW
Washington, DC 20530
Phone: 202-598-0449
Kyle.Boynton@usdoj.gov


*s/Wilfred T. Beaye, Jr.*
WILFRED T. BEAYE, JR.
Trial Attorney
950 Pennsylvania Ave. NW
Washington, DC 20530
Phone: 771-333-1681
Wilfred.Beaye@usdoj.gov

# CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing will be served electronically to counsel for defendant, via the Court's Electronic Case Filing System, on June 28, 2024.

_s/ Wilfred T. Beaye, Jr._
WILFRED T. BEAYE, JR.
Trial Attorney